AULTMAN *v.* AULTMAN.

No. 8945.   December 19, 1932.

*Forehand & Ford* and *Perry & Tipton,* for plaintiff in error.

*W. J. Crowe, J. B. Williamson,* and *Bennet & Peacock,* contra.

BECK, P. J.   (After stating the foregoing facts.)

The first three grounds of the motion for a new trial are the usual general grounds.   In an amendment to the motion are four grounds upon the overruling of which error is assigned.   Ground numbered 4 is an elaboration of the general grounds.   The fifth ground is as follows: "The movant points out and shows to the court that in the charge delivered to the jury upon the trial of the case, by way of instructing the jury as to the contentions of the defendant, the court charged the jury as follows: 'In answer to the charges made in the petition and the claim set up therein the defendant has come into court and has filed an answer.   I explained to you that you will have this answer out with you, and that you might read it in order to fully inform yourselves as to the nature of the defensive matter set up therein.   As previously stated, he denies all of the material allegations that seek to set up any liability on his part to his brother.   He denies that any sale was made by his brother to him upon the terms and conditions set forth in the petition, and also denies any liability as the result of any such contract of sale.   He admits that late in December, the date you will ascertain from the answer, the 28th, I believe, or the latter part of December, that he did come into possession of the copartnership property, and that same was delivered to him by his brother with the understanding that he, W. A. Aultman, was to receive the same as a bailment, that he was to handle to the best advantage of both parties, that he was to care for the business, pay the debts, and finally, if any balance remained, to pay the plaintiff in the case, J. G. Aultman, his proportion of such remainder.   That is the contention of the defendant in the case, you will of course understand.   Now all of these matters and things are to be determined by you from a consideration of the evidence.   The investigation has been a broad one.   It has extended in many directions; but the outstanding, primary, central issue in the case is, did the plaintiff in the case at the time named in his petition make sale of his business or interest, whatever such interest may have been, to his brother, W. A. Aultman, at and for the sum of $20,000?   It is not contended that any payment has been made.   As a matter of fact it is denied by the plaintiff that any payment on the alleged contract has been

made. Turning to the answer, briefly, it sets out that the plaintiff had been operating his individual business near Arlington for the year, and both plaintiff and defendant realized that it was necessary that the plaintiff sever his connection with and retire from this business at the end of the season of 1929, for the reasons already stated, though no final accounting, adjustment, or settlement of their partnership account had been made, and none was reached until a later date, as defendant remembers, on December 28th, 1929. They discussed the matter of their account from time to time from about November first on, but reached no settlement or definite understanding until December 28th, 1929, as stated. The allegations contained in the 13th paragraph are denied; that was the allegation of the plaintiff of the sale, there being no foundation in fact whatever for same; it is not true that the defendant offered the plaintiff $20,000 for a complete settlement of all of plaintiff's interests in this partnership on the date mentioned, or at any other date. He alleges that the assets of the business at the time he retired, referring to J. G. Aultman, the plaintiff, was not worth more than the debts of the business, the defendant doubting seriously whether the assets could have been turned into sufficient money to pay the debts; it was realized by both of them at the time that the defendant would do well to work the business out of debt and avoid serious loss; so realizing, and with the expressed statement to that effect, the plaintiff, on December 28th or about that time, offered to turn the business over to the defendant, without reservation or condition, provided the defendant would take charge of same in his own individual capacity, as his own individual property and business, assuming all of its liabilities and taking the burden of working it out of debt, thus relieving and releasing the plaintiff entirely as to same, and the defendant thereupon agreed to this proposition and took the plant and business over at that time, and has since had and held the same, and now holds the same as his own individual property and business entirely independent of the plaintiff in all respects.'

"The movant further shows that he, as the defendant in said case, set forth and insisted upon, as a part of his answer and plea to the plaintiff's petition and action, certain affirmative matter, which he quotes from the answer as filed and of record in said case, as follows, to wit: 'As already stated, the plaintiff had been operat-

ing his individual business near Arlington for the year, and both plaintiff and defendant realized that it was necessary that the plaintiff sever his connection with and retire from the business at the end of the season of 1929, for the reasons already stated, though no final accounting, adjustment, or settlement of their partnership account had been made, and none was reached until a later date, as defendant remembers, on December 28th, 1929. They discussed the matter of their account from time to time from about November first on, but reached no settlement or definite understanding until December 28th, 1929, as stated. It is not true that the defendant offered the plaintiff $20,000 for a complete settlement of all of plaintiff's interest in this partnership on the date mentioned (December 16, 1929), or at any other time. The business was then owing the Downing Company a balance of approximately $30,000, and to other parties various amounts aggregating approximately $5,000 to $10,000, and this situation largely the result of plaintiff's own conduct, as above explained. There being little or no prospect of extending or renewing the timber leases, and the greater portion of the timber covered by their original lease being worked out, it was realized by both plaintiff and defendant that the place was not worth more than its debts, and the defendant would do well to work it out of debt. The plaintiff, as before stated, had drawn heavily from the business for his business at Arlington, and according to his own statement had drawn from this business during the four years a net amount of approximately $30,000, in addition to the monthly salary that he had drawn from the business. It was the plaintiff's duty to keep the partnership and other accounts and records, and the defendant insisted strenuously from time to time that the plaintiff make up a full and accurate statement of their partnership account, and their respective individual accounts with the partnership, and thus make an accurate showing in figures as to their standing with each other; but he failed to do this, and finally carried away with him, or withheld in his possession, all of the books and records that he had of these accounts. Without these books and records it is impossible for the defendant to make up an accurate and detailed statement of these accounts, but it should be an easy matter for the plaintiff to do this. From his own knowledge of the business, and from information that he had been able to obtain from time to time from the plaintiff, the defendant

confidently asserts that a true and accurate statement of their accounts would show that plaintiff drew from the business considerably in excess of his one third of the net proceeds or profits of the business for the four years operation. And it being true that the assets of the business at the time he retired from it were not worth more than the debts of the business, the defendant doubting seriously whether the assets could have been turned into sufficient money to pay the debts, it was realized by both of them at the time that the defendant would do well to work the business out of debt and avoid loss. So realizing, and with expressed statement to that effect, the plaintiff, on December 28th or about that date, offered to turn the business over to the defendant, without reservation or condition, provided the defendant would take charge of same in his own individual capacity as his own individual property and business, assuming all of its liabilities and taking the burden of working it out of debt, thus relieving and releasing the plaintiff as to same; and the defendant thereupon agreed to this proposition and took the plant and business over at that time, and has since had and held the same, and now holds the same as his own individual property and business entirely independent of the plaintiff in all respects. . . The defendant denies that it was upon what the plaintiff refers to as "said arrangement" that the plaintiff retired from said partnership and defendant took charge thereof, but avers that same was done under the arrangement stated by defendant above. . . It is not true that there was ever any mention made to defendant of $20,000 as the purchase-price of plaintiff's interest in said business. As to the matter of discovering the clause in the lease to the effect that when any cups were hung on any particular lot or fractional lot that all of the trees on that particular lot or fractional lot would be released from the effect of the lease after the first trees cupped had been worked for four years, the defendant positively avers that this was discovered and discussed between them prior to December 28th, 1929, when their final agreement was reached, and they were both fully aware of this clause in the lease and its effect at that time; and this was taken into consideration by them in making their final agreement. . . Answering the 39th paragraph of the petition, the defendant admits that since he took charge of the business under the agreement with the plaintiff on or about December 28th, 1929, as was

his right, he has operated and carried on the business as his own and in his own name. . . Defendant, on the facts shown, has taken the position throughout, and here and now asserts the position that since they reached an agreement as already set forth, on December 28th, 1929, and under which defendant took individual possession and control of the property and business of the firm, there has been nothing between them to arbitrate. . . The defendant admits that he is a man of small means, and avers that the partnership with the plaintiff was ended with the year 1929, and has not since existed. In this connection the defendant reaffirms the statement previously made, that at the time the final agreement was reached between plaintiff and defendant on December 28th, 1929, under which the defendant succeeded the firm in the ownership of all of its property and business, with the assumption of its liabilities, the plaintiff realized that he had already drawn from the business more than his share of the net profits, and that the assets then remaining were not at best more than sufficient to pay the liabilities, and that it would require the most careful management to realize a sufficient amount to pay the outstanding debts.'"

Reverting to the portion of the charge of the court quoted in the first part of this decision, and comparing same with the portion of his answer last above quoted, movant insists that the charge given was erroneous and harmful to the defendant; that the instructions were in substance and effect inconsistent with the defendant's contentions as shown by his answer and plea, and were confusing and did confuse the jury as to the main and vital issues made by defendant's answer; that the court did not elsewhere in the charge or in any manner give any explanation to relieve or to any extent mitigate the harmful effect of the portion of the charge pointed out.

The part of the charge set forth in this ground, considered with the quoted portions of the answer of the defendant, is not open to the criticisms made. There may be certain inaccurate expressions used, but the charge covered the issues dealt with in that portion of it fully and completely; and the court did not err in instructing the jury that the "outstanding, central issue in the case is, did the plaintiff in the case, at the time named in his petition, make sale of his business or interest, whatever such interest may have been, to his brother, W. A. Aultman, at and for the sum of $20,000?" The plaintiff himself testified that this offer was made and ac-

cepted. In paragraph 30 of the answer, while the defendant says, "It is not true that the defendant offered the plaintiff $20,000 for a complete settlement of all plaintiff's interest in this partnership on the date mentioned [December 16, 1929], or at any other time," yet the defendant in that paragraph states the arrangement and understanding between the partners under which the defendant should take charge of the entire business. After stating in his answer the understanding under which he took charge of the business, the defendant, in the paragraph last referred to, says: "So realizing, and with expressed statement to that effect, the plaintiff, on December 28th or about that date, offered to turn the business over to the defendant, without reservation or condition, provided the defendant would take charge of same in his own individual capacity, as his own individual property and business, assuming all of its liabilities and taking the burden of working it out of debt, thus relieving and releasing the plaintiff as to same; and the defendant thereupon agreed to this proposition and took the plant and business over at that time, and has since had and held the same and now holds the same as his own individual property and business, entirely independent of the plaintiff in all respects." Here is a statement in the defendant's answer that under the arrangement, as he states it, he did take the plant and business over at that time and has since had and held the same and now holds the same as his own individual property and business entirely independent of plaintiff in all respects. It is true that the defendant here states a different understanding and agreement under which he took charge of the business and took possession of the property; but the uncontested fact remains, under this part of the defendant's answer, that he did take the plant over and has since had and held the same and "now holds the same as his own individual property and business." There is an issue as to what was the agreement and understanding under which the defendant took over the business and remained in possession and control of it. The plaintiff's contention as to the truth of this issue is supported by evidence; and the defendant submitted evidence to show that his contention as to the arrangement and understanding was true. That imposed upon the jury the duty of finding the truth of this issue—a vital, controlling issue; and the jury found for the plaintiff. The charge was not erroneous for the reasons assigned.

■ In the 6th ground of the motion the following charge of the court is excepted to: "He [the defendant] admits that late in December, the date you will ascertain from the answer, the 28th I believe, or the latter part of December, he did come into possession of the copartnership property, and that same was delivered to him by his brother (the plaintiff) with the understanding that he, W. A. Aultman, was to receive the same as a bailment, that he was to handle to the best advantage of both parties, that he was to care for the business, pay the debts, and finally, if any balance remained, to pay the plaintiff in the case, J. G. Aultman, his proportion of such remainder. That is the contention of the defendant in the case, you will of course understand." This, while not entirely accurate, yet, taken in connection with the evidence in the case and the allegations in the defendant's plea that he went into possession and control of the property and handled it individually, and has remained in possession of it, is substantially correct.

■ In the last ground of the motion the movant sets forth lengthy excerpts from his answer and from the evidence and complains that the court did not submit to the jury the question as to whether the portions of the answer referred to and which were read by the court were true, or give the jury any instructions regarding the same to govern them in passing upon the same; and movant contends that the jury could not have understood from the whole charge that such issues or contentions were to be passed upon in making the verdict. Upon consideration of the entire charge, the court sufficiently called the attention of the jury to the really material issues in the case; and if the defendant had desired a fuller instruction upon some particular contention in the pleadings, he should have submitted to the court an appropriate written request to charge. The court did deal at length with the portions of the answer of the defendant relating to the material and controlling issues made under the pleadings of both parties and the evidence. None of the portions of the charge excepted to show material error.

This case, in the light of the pleadings of both parties and the evidence submitted by both parties, showed that there was a misunderstanding between the brothers, a disagreement between them as the interests of the two partners in the business, such misunderstandings as led them both to the conclusion—a proper conclusion, no doubt—that the partnership should be dissolved and

that one of them should retire from the partnership concern; and they had an agreement finally as to the retirement of one of the partners and the taking possession of the firm assets by the other, who was to assume the liabilities of the firm. They differ radically as to the terms of their final agreement, the plaintiff setting up his contention as to what the terms of the agreement were clearly and definitely, and the defendant setting up his contention as to what that agreement was, an agreement and understanding that differs materially from that alleged by the plaintiff. Both submitted evidence to sustain their respective contentions; and the jury found, under the court's charge, that the contentions of the plaintiff were true, and, in view of that fact, awarded the verdict complained of. There was evidence to sustain that verdict. The judgment refusing a new trial is·

*Affirmed. All the Justices concur.*